| | |
|---|---|
| **ADRIAN RANGEL**, **LUIS RANGEL**, and **JACOBO RANGEL**, individually and on behalf of all similarly situated individuals,<br><br>Plaintiffs,<br><br>vs.<br><br>**COMPLIANCE STAFFING AGENCY, LLC**, a Pennsylvania limited liability company; and **ELITE STORAGE SOLUTIONS, LLC**, a Delaware limited liability company; jointly and severally,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COLLECTIVE ACTION
## COMPLAINT AND JURY DEMAND

Plaintiffs, Adrian Rangel, Luis Rangel, and Jacobo Rangel (hereinafter collectively referred to as "Plaintiffs"), on behalf of themselves and all others similarly situated, by and through their undersigned counsel, for their Collective Action Complaint against Defendants, allege as follows:

## INTRODUCTION

1.  This case concerns Defendant staffing company (providing staffing services to companies in the coal, gas, and industrial businesses), and Defendant Elite Storage Solutions, LLC (hereinafter collectively referred to as "Defendants"), who intentionally misclassified Plaintiffs and all other members of the putative Class as independent contractors in an effort to avoid paying wages mandated by federal law, as well as to avoid tax, unemployment insurance, and workers compensation payment obligations. Pursuant to this intentional misclassification scheme, Defendants willfully refused to pay Plaintiffs and the putative Class overtime

compensation.

2.	Plaintiffs, on behalf of themselves and other similarly situated workers currently or formerly employed by Defendants, contend that Defendants violated the Fair Labor Standards Act of 1938, 29 U.S.C. § 201, *et seq.* ("FLSA") and attendant regulations by: (1) misclassifying Plaintiffs and the putative Class members as independent contractors; and (2) knowingly suffering and permitting Plaintiff and the putative Class members to work in excess of forty (40) hours during a workweek without paying overtime compensation at a rate of one and one-half times their regular rate.

3.	Plaintiffs and the putative Class members bring this collective action seeking a declaration that their rights and those of others similarly situated have been violated, an award of unpaid wages, an award of liquidated damages, an award of attorneys' fees and costs to make them whole for damages they have suffered, and to help ensure that they and future workers will not be subjected by Defendants to such illegal conduct in the future.

## JURISDICTION AND VENUE

4.	This Court has subject-matter jurisdiction over Plaintiffs' FLSA claim pursuant to 28 U.S.C. § 1331 because Plaintiffs' claim raises a federal question under 29 U.S.C. § 201, *et seq.*

5.	Additionally, this Court has jurisdiction over Plaintiffs' collective action FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction."

6.	Defendants' annual sales exceed $500,000, and Defendants employ more than two persons, so the FLSA applies in this case on an enterprise basis. Defendants' employees engage in interstate commerce; therefore, they are also covered by the FLSA on an individual

basis.

7. This Court has personal jurisdiction over Defendant Compliance Staffing Agency, LLC because it does business within the state of North Carolina.

8. This Court has personal jurisdiction over Defendant Elite Storage Solutions, LLC because it does business within the state of North Carolina.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the acts and omissions giving rise to the claims pled in this Complaint substantially occurred in this District.

## PARTIES

10. Plaintiff Adrian Rangel is a resident of Bailey, North Carolina. At all relevant times, Mr. Adrian Rangel was an employee of Defendants, as defined in 29 U.S.C. §201 *et seq.*, and worked as a floorman from in or about March 2015 to June 22, 2015. Mr. Adrian Rangel signed a consent form to join this lawsuit, which is attached to this Complaint as *Exhibit A*.

11. Plaintiff Jacobo Rangel is a resident of Bailey, North Carolina. At all relevant times, Mr. Jacobo Rangel was an employee of Defendants, as defined in 29 U.S.C. §201 *et seq.*, and worked as a forklift operator from in or about March 2015 to June 22, 2015. Mr. Jacobo Rangel signed a consent form to join this lawsuit, which is attached to this Complaint as *Exhibit B*.

12. Plaintiff Luis Rangel is a resident of Bailey, North Carolina. At all relevant times, Mr. Luis Rangel was an employee of Defendants, as defined in 29 U.S.C. §201 *et seq.*, and worked as a scissor lift operator from in or about March 2015 to June 22, 2015. Mr. Luis Rangel signed a consent form to join this lawsuit, which is attached to this Complaint as *Exhibit C*.

13. Defendant Compliance Staffing Agency, LLC (hereinafter, "Defendant

Compliance") is a Pennsylvania limited liability company with its principal place of business located in Canonsburg, Pennsylvania.

14. Defendant Elite Storage Solutions, LLC (hereinafter, "Defendant Elite") is a Delaware limited liability company with its principal place of business located in Monroe, Georgia.

15. According to Defendant Compliance's website, "Compliance Staffing Agency is a staffing company who specializes in supplying safe, efficient, and productive *employees* to the energy industry." *See* http://compliancestaffingagency.com/ (emphasis added). Specifically, Defendant Compliance "provides staffing services to companies in the coal, gas and industrial businesses." *Id*.

16. Defendant Compliance further promotes its services and benefits on its website:

> We work for both the employer and the *employee*. If you're looking for work, we match your industry skills with the right employer. Our employees are our most important assets. We treat them as such by providing them with a competitive salary and a comprehensive benefits plan with 401k. We also help companies with their staffing needs, from providing job candidates to conducting MSHA training.

*Id*. (emphasis added).

17. Defendant Elite provides storage solutions to a variety of industries. *See* http://www.elitestoragesolutions.com/. "In addition to manufacturing storage systems such as structural pallet racks, cantilever racks and archive storage racks, Elite also offers a full range of services such as site audits and surveys in North, Central and South America, and the Caribbean." *Id*.

18. Defendant Elite partners with Defendant Compliance to hire employees to work on storage projects, including building pallet racks for storage systems.

19. Defendants were directly involved in the decision to misclassify workers as

independent contractors rather than employees and to perpetuate and maintain this unlawful classification system.

20. Defendants made the decision to misclassify workers as independent contractors in order to evade their statutory obligations under the wage and hour laws and to pad their profits.

21. Defendants are joint employers of all potential Class members and, as such, are jointly and severally liable for any violations of the wage and hour laws set forth in this Collective Action Complaint.

22. Defendants conspired to commit the following unlawful acts: (1) misclassifying workers as independent contractors; and (2) knowingly suffering and permitting Plaintiffs and the putative Class members to work in excess of forty (40) hours during a workweek without paying overtime compensation at a rate of one and one-half times their regular rate.

23. Defendants knew or should have known the business model they developed and implemented was unlawful under applicable laws. Nonetheless, Defendants continued to willfully engage in the violations described herein.

24. At all relevant times, Defendants owned and operated a business enterprise engaged in interstate commerce utilizing goods moved in interstate commerce as defined in 29 U.S.C. § 203(s).

25. Defendants constitute an "enterprise" within the meaning of 29 U.S.C. § 203(r)(1), because they perform related activities through common control for a common business purpose.

26. At all relevant times, Plaintiffs and the Class members were engaged in commerce within the meaning of 29 U.S.C. §§ 206(a) and 207(a).

## GENERAL ALLEGATIONS

27. Plaintiff Adrian Rangel worked as a floorman for Defendants from in or about March 2015 to June 22, 2015.

28. Plaintiff Jacobo Rangel worked as a forklift operator for Defendants from in or about March 2015 to June 22, 2015.

29. Plaintiff Luis Rangel worked as a scissor lift operator for Defendants from in or about March 2015 to June 22, 2015.

30. In or about March 2015, Defendant Elite and Defendant Compliance partnered to hire Plaintiffs. As part of their employment with Defendants, Plaintiffs assembled pallet racks in Tennessee at the site of Defendant Elite's client.

31. While performing such duties, Plaintiffs routinely worked in excess of eighty (80) hours per workweek. Plaintiffs were each paid an hourly wage for all hours worked, but were not paid an overtime premium for hours worked during the workweek in excess of forty (40). At all relevant times, Plaintiff Adrian Rangel was paid a straight wage of $18 per hour for all hours worked, Plaintiff Jacobo Rangel was paid a straight wage of $14 per hour for all hours worked, and Plaintiff Luis Rangel was paid a straight wage of $14 per hour for all hours worked.

32. While performing such duties, Plaintiffs' compensation came from Defendant Compliance, as reflected in the pay stubs attached as *Exhibit D*. The pay stubs do not reflect any mandatory statutory deductions owed to employees, and do not reflect the amount of hours actually worked by Plaintiffs. *See Exhibit D*. Little information is included in the pay stubs, save a lump payment amount, a date, and a reference date. *Id*.

33. As a matter of common policy and practice, Defendant Compliance misclassifies all workers that perform services for its customers, including those that performed services for

Defendant Elite, and pays them a straight hourly rate for all hours worked, including overtime.

34. Consistent with this common policy and practice, Plaintiffs and others similarly situated were intentionally misclassified by Defendants as independent contractors.

35. As a result of Defendants' common misclassification policy, Defendants have not paid overtime pay to Plaintiffs and others similarly situated.

36. The FLSA applied to Plaintiffs and the Class members at all times during which they worked for Defendants. No exceptions to the FLSA apply to Plaintiffs and the Class.

37. Upon information and belief, Defendant Compliance employed no less than one hundred workers who performed services for Defendant Compliance's customers throughout the relevant time period without paying overtime pay and denying them the rights and benefits due an employee. This number includes the workers that performed services for Defendant Elite.

38. At all relevant times, Defendants directly or indirectly exercised control over the wages, hours, and working conditions of Plaintiffs and similarly situated members of the putative Class.

39. At all relevant times to this Complaint, the employment terms, conditions, and policies that applied to Plaintiffs were the same as those applied to other putative Class members who also performed services for Defendant Compliance's customers, which included Defendant Elite.

40. Plaintiffs and members of the putative Class incurred financial loss, injury, and damage as a result of Defendants' business practice of misclassifying them as independent contractors and failing to pay them overtime pay.

41. Defendants' misclassification of Plaintiffs and other putative Class members as independent contractors was specifically intended to enhance Defendants' profit margins at the

expense of the Class by knowingly suffering and permitting Plaintiffs and the Class members to work in excess of forty (40) hours during a workweek without paying overtime compensation at a rate of one and one-half times their regular rate.

42. Defendants' misclassification of Plaintiffs and those similarly situated was willful.

43. Defendants knew or should have known that it was improper to classify Plaintiffs and putative Class members as independent contractors.

44. Workers in the putative Class cannot "elect" to be treated as employees or independent contractors under threat of adverse treatment. Despite this, Defendants unfairly, unlawfully, fraudulently, and unconscionably attempt to coerce workers in the Class to waive their statutory rights and elect to be treated as independent contractors.

45. Any contract which attempts to have workers in the putative Class waive, limit, or abridge their statutory rights to be treated as an employee under the FLSA or other applicable wage and hour laws is void, unenforceable, unconscionable, and contrary to public policy.

46. The determining factor as to whether Plaintiff and those similarly situated are employees or independent contractors under FLSA is not the workers' election, subjective intent, or any contract. Rather, the test for determining whether an individual is an "employee" under the FLSA is the economic reality test. *See Rutherford Food Corp. v. McComb*, 331 U.S. 722, 727 (1947). Under the economic reality test, employee status turns on whether the individual is, as a matter of economic reality, in business for herself and truly independent or, rather, is economically dependent upon finding employment in others.

47. Under the applicable test, courts utilize the following factors to determine economic dependence and employment status: (1) the degree of control exercised by the alleged

employer; (2) the relative investments of the alleged employer and employee; (3) the degree to which the employee's opportunity for profit and loss is determined by the employer; (4) the skill and initiative required in performing the job; (5) the permanency of the relationship; and (6) the degree to which the alleged employee's tasks are integral to the employer's business.

48. The totality of circumstances surrounding the employment relationship between Defendants and the putative Class members establishes economic dependence by the Class on Defendants and employee status. Here, Plaintiffs and all other Class members are not in business for themselves and truly independent, but rather are economically dependent upon finding employment with Defendants. Plaintiffs and the Class members are not engaged in occupations or businesses distinct from that of Defendant Compliance's customers, like Defendant Elite. To the contrary, Plaintiffs and the Class members are the basis for Defendant Compliance's business, and that of its customers like Defendant Elite. Defendant Elite, like other of Defendant Compliance's customers, obtain clients who seek out storage assembly and other services, and Defendant Compliance Staffing Agency, LLC sources and pays workers who perform services on behalf of Defendants. Defendants retain pervasive control over the business operations as a whole, and Plaintiffs and the Class members.

    a. **Degree of Control Exercised by Defendants**

49. Plaintiffs and the other members of the putative Class do not exert control over any meaningful part of Defendants' business operations and do not stand as a separate economic entity from Defendants. Defendants exercise control over all aspects of the working relationship with Plaintiffs and the putative Class members.

50. Plaintiff and the putative Class members' economic status is inextricably linked to conditions over which Defendants have complete control, including without limitation

advertising and promotion, business and financial relationships with customers, business and financial relationships with insurers, and customer volume.

51. Defendants exercise significant control over the work conditions of Plaintiffs and others similarly situated; including, but not limited to:

 a. Defendants controlled Plaintiffs' and Class members' wages, hours, and daily work schedules;

 b. Defendants determined the tools and equipment Plaintiffs and Class members have to use rather than allowing Plaintiffs and Class members to use their own judgment;

 c. Defendants require Plaintiffs and Class members to undergo and obtain training.

 d. Defendants required Plaintiffs and Class members to routinely work in excess of eighty (80) hours per week.

 b. **Facts Establishing No Skill or Initiative of a Person in Business for Herself**

52. Plaintiffs, like all Class members, did not exercise the skill and initiative of a person in business for herself or himself.

53. Plaintiffs and Class members are not required to have any specialized or unusual skills to perform their job. The skills utilized in performing services for Defendant Compliance's customers, including the pallet racking services performed for Defendant Elite, are commensurate with those exercised by ordinary people.

54. Plaintiffs, like all other Class members, did not have the opportunity to exercise the business skills and initiative necessary to elevate their status to that of an independent contractor: they owned no enterprise, nor did they maintain a separate business structure or facility.

55. Class members had no control over customers, nor did they actively participate in

any efforts to increase Defendants' customer base or profit, or to improve business in any capacity.

56. Defendants did not permit Plaintiffs or other Class members to hire or subcontract other qualified individuals to provide additional services to customers, thereby increasing their revenue, as an independent contractor in business for himself would have the authority to do.

c. **Facts Establishing Relative Investment**

57. Plaintiffs' and Class members' relative investment is minor when compared to the investment made by Defendants.

58. Plaintiffs and Class members make no financial investment in Defendants' facilities, advertising, maintenance, staffing, and contractual relationships. All capital investment and risk belongs to Defendants. Absent Defendants' investment and provision of the business, Plaintiffs and the class members would not earn anything.

d. **Facts Establishing Opportunity for Profit and Loss**

59. Defendants managed all aspects of the business operations, including without limitation attracting investors, establishing business and customer relationships, maintaining the premises, establishing the hours of operation, coordinating advertising, and hiring and controlling the staff. Defendants provided all necessary capital to open and operate the business.

60. Neither Plaintiffs nor Class members had responsibility for any aspect of Defendants' ongoing business risk.

e. **Facts Establishing Permanency**

61. Plaintiffs performed services for Defendant Compliance's customers, including Defendant Elite, during the applicable statutory period. Upon information and belief, many Class

members have worked for Defendants for several months.

      f. **Facts Establishing Class Members Are an Integral Part of Employer's Business**

62. Plaintiffs and Class members are critical to Defendants' success. Defendant Compliance's customers' operations, like Defendant Elite's, are dependent on the services Class members provide for them. Defendant Compliance's operations are wholly dependent on the services Plaintiffs and Class member provide for its customers like Defendant Elite.

63. Upon information and belief, the primary "product" or "good" Defendants are in business to sell consists of services provided by members of the Class.

64. Members of the Class, like Plaintiffs, are economically dependent on Defendants and subject to significant control by Defendants.

      g. **Facts Establishing That Defendants' Acts Were Willful**

65. All actions by Defendants described herein were willful and intentional, and they were not the result of mistake or inadvertence.

66. Defendants were aware that the FLSA applies to their business at all relevant times and that, under the economic realities test applicable to determining employment status under those laws, Plaintiffs and Class members were misclassified as independent contractors.

67. Despite this notice of their violations, and in an effort to enhance Defendants' profits, Defendants continued to intentionally misclassify workers like Plaintiff and similarly situated Class members, and knowingly suffered and permitted them to work in excess of forty (40) hours during a workweek without paying overtime compensation at a rate of one and one-half times their regular rate. Such conduct was intentional, unlawful, fraudulent, deceptive, unfair, and contrary to public policy.

## INJURY AND DAMAGE

68. Plaintiff and all Class members suffered harm, injury, and damage, including financial loss, as a result of Defendants' conduct complained of herein.

69. Plaintiffs and the Class members were entitled to overtime pay for their work performed for Defendants. By failing to pay Plaintiffs and the Class members overtime pay, Defendants injured Plaintiffs and the Class members and caused them financial loss, harm, injury, and damage.

## COLLECTIVE ACTION ALLEGATIONS

70. Plaintiffs brings Count I of this action pursuant to 29 U.S.C. § 216(b) of the FLSA on his own behalf and on behalf of all similarly situated current and former workers of Defendant Compliance who performed services for any of Defendant Compliance's customers, including Defendant Elite, and were subject to Defendants' illegal misclassification scheme at any time during the last three years.

71. Excluded from the Class are all of Defendants' executives, administrators, professional employees, and outside sales persons.

72. A collective action under the FLSA is appropriate because, under 29 U.S.C. § 216(b), the workers described as parties to the Complaint are "similarly situated" to Plaintiffs.

73. The workers Plaintiffs seeks to represent in this case include:

> *All workers who performed services for Defendant Compliance Staffing Agency, LLC's customers, including but not limited to, Defendant Elite Storage Solutions, LLC, and were misclassified as independent contractors at any time in the past three years.*

74. The putative Class members are similarly situated to Plaintiffs because they worked in the same or similar positions, were subjected to the same unlawful practices, policies, or plans, and their claims are based upon the same factual and legal theories.

75. The working relationships between Defendants and every putative Class member are exactly the same and differ only in name, location, and rate of pay. The key legal issue in the collective action—whether Defendants' classification policy and practice violates the FLSA—does not vary substantially from Class member to Class member.

76. Plaintiffs estimate the Class, including both current and former workers over the relevant three-year period, will include no less than one hundred members. The precise number of Class members should be readily discernible from a review of Defendants' records.

## COUNT I
### (29 U.S.C. § 216(b) Collective Action)

### VIOLATION OF THE FLSA
### (Failure to Pay Overtime Wages)

77. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

78. This claim arises out of Defendants' willful violation of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, for failure to pay Plaintiffs and members of the Class the federally mandated overtime premium rate of one and one-half times their regular rate of pay for every hour worked in excess of forty (40) hours per workweek, 29 U.S.C. § 207, to which they were entitled.

79. At all times relevant to this action, Defendants were jointly "employers" under the FLSA, 29 U.S.C. § 203(d), subject to the provisions of 29 U.S.C. § 201, *et seq*.

80. At all times relevant to this action, Plaintiffs and the Class members were "employees" of Defendants within the meaning of the FLSA, 29 U.S.C. § 203(e)(1).

81. At relevant times, all Defendants jointly employed Plaintiffs and all similarly situated Class members within the meaning of the FLSA.

82. Defendants engaged in interstate commerce or in the production of goods for commerce, as defined by the FLSA.

83. Plaintiffs and the Class members either: (1) engaged in commerce; (2) engaged in the production of goods for commerce; or were (3) employed in an enterprise engaged in commerce or in the production of goods for commerce.

84. Plaintiffs' positions are not exempt from the FLSA.

85. At all times relevant to this action, Defendants "suffered or permitted" Plaintiffs and the Class members to work and thus "employed" them within the meaning of the FLSA, 29 U.S.C. § 203(g).

86. The FLSA requires an employer to pay employees the federally mandated overtime premium rate of one and one-half times their regular rate of pay for every hour worked in excess of forty (40) hours per workweek. 29 U.S.C. § 207.

87. 29 U.S.C. § 207(a)(2)(c) provides in pertinent part:

> No employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce . . . for a workweek longer than forty hours . . . unless such employee receives compensation for his employment in excess of the hours above specified at a rate of not less than one and one-half times the regular rate at which he is employed.

88. Defendants violated the FLSA by misclassifying Plaintiffs and the Class members as independent contractors, and failing to pay them the federally mandated overtime premium for all hours worked in excess of forty (40) hours per workweek.

89. Upon information and belief, Defendants have corporate policies of evading overtime pay for workers.

90. Defendants' violations of the FLSA were knowing and willful.

91. By failing to compensate workers at a rate not less than one and one-half times their regular rate of pay for work performed in excess of forty (40) hours in a workweek, Defendants violated the FLSA, 29 U.S.C. § 201, *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a). Like Plaintiffs, all similarly situated employees are victims of a uniform and company-wide enterprise which operates to classify them as independent contractors and compensate them at a rate less than the federally mandated overtime wage rate. This uniform policy, in violation of the FLSA, has been, and continues to be, applied to all employees who have worked or are working for Defendants in the same or similar position as Plaintiffs.

92. The FLSA, 29 U.S.C. 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid overtime wages plus an additional equal amount in liquidated damages, costs, and reasonable attorneys' fees.

93. Under 29 C.F.R. §§ 516.2 and 825.500, every employer must maintain and preserve payroll or other records containing, without limitation, the total hours worked by each employee each workday and total hours worked by each employee each workweek.

94. To the extent Defendants failed to maintain all records required by the aforementioned statutes and regulations, and failed to furnish Plaintiffs and the Class comprehensive statements showing the hours they worked during the relevant time period, Defendants also violated the aforementioned laws causing Plaintiffs and the Class damages.

95. When the employer fails to keep accurate records of the hours worked by its employees, the rule in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687–88 (1946), *superseded by statute on other grounds*, is controlling. That rule states,

> [W]here the employer's records are inaccurate or inadequate . . . an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work

as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

96. The Supreme Court set forth this test to avoid incentivizing an employer's failure to keep proper records in conformity with its statutory duty, which would enable the employer to reap the benefits of the employees' labors without paying the proper compensation required by the FLSA. Where damages are awarded pursuant to this test, "[t]he employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records in accordance with . . . the Act." *Id.*

97. As a result of the foregoing conduct, Plaintiffs seek on behalf of themselves and all members of the Class unpaid overtime wages at the required legal rate for all working hours during the relevant time period, all other damages, attorneys' fees and costs, restitution, liquidated damages, penalties, injunctive relief, interest calculated at the highest legal rate, and all other relief allowed by law.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff requests the following relief:

    a. Certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth above;

    b. Designating Plaintiffs as Class Representatives;

    c. Declaring that Defendants willfully violated their obligations under the FLSA and its attendant regulations as set forth above;

    d. Designating Sommers Schwartz, P.C. and Krompecher Law Firm, PLLC as Co-Lead Counsel for Plaintiff and the Class members on their Collective Action claims;

    e. Awarding Plaintiffs and the Class members all available compensatory damages and punitive damages, including, *inter alia*, all unpaid wages

owed under applicable law;

f. Granting judgment in favor of Plaintiffs and the Class members and against Defendant and awarding the lost overtime compensation calculated at the rate of one and one-half (1.5) of Plaintiffs and Class members' regular rate multiplied by all hours that Plaintiffs and the Class members worked in excess of forty (40) hours per week for the past three years;

g. Awarding liquidated damages to Plaintiffs and Class members in an amount equal to the amount of unpaid overtime found owing to them;

h. Awarding reasonable attorneys' fees and costs incurred by Plaintiffs in filing this action;

i. Awarding pre- and post-judgment interest to Plaintiffs on these damages; and

j. Such further relief as this court deems appropriate.

## JURY DEMAND

NOW COME Plaintiffs, by and through their attorneys, Sommers Schwartz, P.C., and Krompecher Law Firm, PLLC, and hereby demand a trial by jury of the above entitled matter.

This, the 19th day of January 2016.

/s/Kevin J. Stoops
MI Bar No. P64371
Jesse L. Young
MI Bar No. P72614
SOMMERS SCHWARTZ, P.C.
One Towne Square, Suite 1700
Southfield, Michigan 48076
248-355-0300
kstoops@sommerspc.com
jyoung@sommerspc.com
*Counsel for Plaintiffs*

/s/*Pedro Krompecher*
Pedro Krompecher
NC State Bar No. 40736
KROMPECHER LAW FIRM, PLLC
4010 Barrett Drive #203
Raleigh, North Carolina 27609
Telephone: (919) 977-8082
pedro@krompecherlaw.com

*Local Civil Rule 83.1 Counsel for Plaintiffs*